# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11600-RGS |
| BOGATIN FAMILY TRUST, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11642-RGS |
| CYNTHIA A. BENNETT and GUY E. MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>Defendants. | No. 04-cv-11651-MLW |

[Caption continues on next page]

## MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS FOR APPOINTMENT OF TRI-LEAD COUNSEL AND FOR CONSOLIDATION

| | |
|---|---|
| GHASSAN J. AWALI et al. Individually And On Behalf Of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al., )<br><br>Defendants. ) | No. 04-cv-11709-RGS |

| | |
|---|---|
| WILLIAM S. GROESCHEL, Individually And On Behalf Of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al., )<br><br>Defendants. ) | No. 04-cv-11735-RGS |

| | |
|---|---|
| NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, ROSE M. IANNACCONE, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of FIDELITY MAGELLAN and FIDELITY CONTRAFUND, )<br><br>Plaintiffs, )<br><br>v. )<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC., )<br><br>Defendants. ) | No. 04-cv-11756-MLW |

[Caption continues on next page]

DAVID O. FALLERT, Individually And On
Behalf Of All Others Similarly Situated,   )
             )   No. 04-cv-11812-RGS
          Plaintiff, )
             )
     v.        )
             )
FIDELITY MANAGEMENT & RESEARCH )
COMPANY, et al.,        )
             )
        Defendants. )
             )
             )

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   ARGUMENT......................................................................................................2

    A.    The *Haugen* Action States Clear and Focused Section 36(b)
        Claims. ................................................................................................2

    B.    The Class Actions Present a Hodge-Podge of Claims, Barely
        Touching on the Core Section 36(b) Claims of the *Haugen*
        Action. ................................................................................................3

    C.    There Are Inherent Conflicts Between the Derivative Claims
        and the Class Claims Asserted by the Class Plaintiffs. ...................10

    D.    Consolidation of the *Haugen* Action with the Class Actions
        Would Substantially Delay the Resolution of the *Haugen*
        Claims. ..............................................................................................11

        1.    The Class Action Plaintiffs Do Not Have Standing to Sue On Behalf of
            the Entire Universe of 206 Fidelity Mutual Funds, and Thus Standing
            Disputes Will Unnecessarily Delay the Class Actions............................12

        2.    The *Haugen* Action Will Be Delayed While Class Certification Issues
            in the Class Actions Are Resolved. .................................................14

        3.    The *Haugen* Action Will Be Delayed While Dispositive Motions
            Pertinent Only To The Class Actions Are Resolved. ............................15

        4.    Case Management Conflicts Between the Class Actions and the
            *Haugen* Action Will Cause Delay. .................................................16

    E.    The Blanket Consolidation of the *Haugen* Action with the
        Class Actions Will Create Substantial Confusion and Result in
        Severe Prejudice to the *Haugen* Plaintiffs. ...................................16

III.  CONCLUSION ................................................................................................18

IV.   REQUEST FOR ORAL ARGUMENT.........................................................19

## I. INTRODUCTION

Plaintiffs in *Haugen v. Fidelity Management & Research Company,* 04-cv-11756-MLW - (respectively the "*Haugen* Plaintiffs" and "*Haugen* Action")[1] respectfully submit that the Court should deny the pending motions to consolidate and appoint tri-lead counsel that were filed in *Gilliam v. Fidelity Management & Research Co.*, Civil Action No. 04-cv-11600 (the "*Gilliam* Action"). Plaintiffs in the *Gilliam* Action (the "*Gilliam* Plaintiffs") have agreed to consolidate their class action with the plaintiffs in four other class actions pending in this Court.[2] The Class Action Plaintiffs also seek to consolidate the *Haugen* Action and another pending case that is similar to the *Haugen* Action, *Bennett v. Fidelity Management and Research Company, et al.,* Civil Action No. 04-cv-11651 RGS (the "*Bennett* Action"), with the Class Actions over the objections of the *Haugen* Plaintiffs and the *Bennett* Plaintiffs[3]. Defendants in the *Haugen* Action and the *Bennett* Action oppose consolidation as well.

The *Gilliam* Plaintiffs' Motion for Consolidation and Motion for Appointment of Tri-lead counsel and Appointment of Liaison Counsel should be denied to the extent that the Class Actions would encompass the *Haugen* (and *Bennett*) Actions for four main reasons: (1) the causes of action asserted by the Class complaints differ fundamentally from those raised in the *Haugen* Action; (2) there are inherent conflicts between the class and derivative claims asserted by the Class Action plaintiffs; (3) wholesale consolidation of the *Haugen* Action with the Class Actions, which the Class Plaintiffs seek, would create the potential for lengthy delay in the resolution of the *Haugen* claims; and (4) the blanket consolidation of the *Haugen* Action with the

---

[1] The *Haugen* Plaintiffs filed this action on May 5, 2004 in the United States District Court for the District of Arizona. By Order dated July 16, 2004, the *Haugen* Action was transferred to this Court.

[2] *Bogatin Family Trust v. Fidelity Management and Research Co.,* Civil Action No. 04-11642 (the "*Bogatin* Action"), *Awali v. Fidelity Management and Research Co.,* Civil Action No. 04-11709 (the "*Awali* Action"), *Groeschel v. Fidelity Management and Research Co.,* Civil Action No. 04-11735 (the *"Groeschel* Action"), and *Fallert v. Fidelity Management and Research Co.,* Civil Action No. 04-11812 (the "*Fallert* Action) (collectively referred to herein as the "Class Actions"). The Class Actions have all been assigned to Judge Richard G. Stearns.

[3] On September 3, 2004, this Court granted Defendant Fidelity Management & Research Company's motion to transfer the *Bennett* Action to Judge Wolf where the *Haugen* Action is pending. The *Haugen* Plaintiffs anticipate meeting and conferring with counsel for *Bennett* and Defendants and will file a motion in Judge Wolf's court to coordinate discovery and/or to consolidate the *Haugen* and *Bennett* Actions at some later time.

Class Actions will create substantial confusion and result in severe prejudice to the *Haugen* Plaintiffs.

## II. ARGUMENT

**A.    The *Haugen* Action States Clear and Focused Section 36(b) Claims.**

The *Haugen* Action is a shareholder action brought by Plaintiffs pursuant to section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended in 15 U.S.C. §§ 80a-1-80a-64, on behalf of two open-end registered investment companies, or mutual funds, created, sold, advised and managed by the Fidelity entities. *Haugen* Complaint, ¶¶ 1, 33-39. Those mutual funds are: the Fidelity Magellan Fund and the Fidelity Contrafund (collectively, the "Funds"). *Haugen* Complaint, ¶ 1.[4] Together the Funds have assets under management in excess of $103 billion. *Id.*

In their lawsuit, the *Haugen* Plaintiffs seek to recover, on behalf of the Funds, advisory fees charged by the Defendants and to recover the excess profits resulting from economies of scale wrongfully retained by Defendants in breach of their fiduciary duties to the Funds under the ICA. *Haugen* Complaint, ¶¶ 12, 24. As summarized below, and alleged in great detail in the *Haugen* Complaint, the claims in the *Haugen* Action are specifically tailored to advance advisory fee claims pursuant to section 36(b) of the ICA.

Defendants receive fees paid by Plaintiffs and other shareholders of the Funds for providing (a) pure investment advisory services and (b) administrative services. These fees are based on a percentage of the net assets of each of the Funds. *Haugen* Complaint, ¶ 5. While over the years the Funds have grown dramatically in size, the nature of the services rendered by Defendants has changed little, if at all. Indeed, advances in computing and communication technologies in the past twenty years have resulted in exponential efficiencies that have dramatically reduced the costs of servicing mutual funds. As a result, the *Haugen* Plaintiffs allege the advisory fees paid to Defendants (and accepted by them in violation of their statutory

---

[4] A copy of the *Haugen* complaint is attached hereto as Exhibit 1.

fiduciary duties) are disproportionately large in relationship to the services rendered to Plaintiffs. *Haugen* Complaint, ¶¶ 22-23.

In addition, the *Haugen* Plaintiffs allege that Defendants, in violation of their fiduciary duties to Plaintiffs, have retained excess profits resulting from economies of scale. These economies of scale are a product of the dramatic growth in assets managed by Defendants, caused mainly by their ability to provide the identical investment advisory services they provide Plaintiffs to other clients at little or no additional cost. The excess profits resulting from these economies of scale belong to Plaintiffs and the other shareholders of the Funds. *Haugen* Complaint, ¶¶ 7; 68-69.

Plaintiffs allege that the fees charged by Defendants for investment advisory services are excessive in light of the nature and quality of services provided to the Funds, the profitability of the Funds to the Defendants, economies of scale, comparative fee structures, and the fallout benefits generated. *Haugen* Complaint, ¶¶ 45-115. Indeed, the pure investment advisory services that Defendants provide to the Funds are identical to the investment advisory services Defendants or its affiliates provide to other clients, and entail essentially identical costs. Despite the equivalence of the investment advisory services Defendants provide to the Funds and its other clients, the fees in dollar amounts that Defendants receive from the Funds that are attributable to pure investment advisory services are much higher than the fees Defendants or their affiliates receive from other clients for the identical services. *Haugen* Complaint, ¶¶ 10-12.

**B.    The Class Actions Present a Hodge-Podge of Claims, Barely Touching on the Core Section 36(b) Claims of the *Haugen* Action.**

In contrast to the focused allegations in the *Haugen* Action, the Class Actions present a hodge-podge of both class claims and derivative claims against Fidelity entities, and various individuals, who were trustees charged with overseeing the Fidelity Fund Complex, making only vague allegations of excessive fees as an afterthought. The first of the Class Actions – the

*Gilliam* Action – was filed two months after the *Haugen* Action on July 19, 2004. The four other Class Action Complaints mirror the allegations of the *Gilliam* Action virtually *verbatim.*

At the heart of the Class Action Complaints are allegations that Fidelity drew upon the assets of the Fidelity funds to pay brokers aggressively to push Fidelity funds over other funds, in order to maximize Fidelity's fees, and that Fidelity concealed such payments from investors by disguising them as brokerage commissions. *Gilliam* Complaint, ¶¶ 2-4; *Bogatin Family Trust* Complaint, ¶¶ 2-4; *Awali* Complaint, ¶¶ 2-4; *Groeschel* Complaint, ¶¶ 2-4; and *Fallert* Complaint, ¶¶ 2-4. Although the Class Plaintiffs, as an afterthought, make some general allegations that the fees charged by Fidelity were excessive, they do so in a vague and cursory manner. In contrast with the detailed and specific allegations of advisory fee wrongdoing presented by the *Haugen* Plaintiffs, *Haugen* Complaint, ¶¶ 45-115, the Class Action Complaints offer only fleeting and superficial allegations regarding excessive fees. Such cursory treatment of Plaintiffs' fundamental claims is unlikely to withstand a motion to dismiss under *Olesh v. Dreyfus Corp.*, No. 94-1664, 1995 WL 500491, at *19 (E.D.N.Y. Aug. 8, 1995) ("complaint nowhere alleges that the fee increases at issue here would violate [standard of reasonable relationship to product of arm's length bargaining]" and therefore fails to cite an actionable claim under section 36(b) (citing *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 81 (2d Cir. 1985), and *quoting Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)).

The Class Actions allege a complex scheme of fraudulent conduct, seek class certification, and demand a jury trial. The Class Plaintiffs assert the following claims:

Count I:      Class Claims Against Investment Adviser Defendants and Trustee Defendants under Section 34(b) of the ICA;

Count II:     Derivative Claims Against Investment Adviser Defendants and General Distributor under Section 36(b) of the ICA;

Count III:    Class and Derivative Claims Against Control Persons of Investment Advisor and General Distributor under Section 48(a) of the ICA;

Count IV: Derivative Claims Against Investment Adviser Defendants under Sections 206 and 215 of the Investment Advisors Act ("IAA");

Count V: Class Claims Against Investment Adviser Defendants for Breach of Fiduciary Duty;

Count VI: Class Claims Against Trustee Defendants for Breach of Fiduciary Duty; and

Count VII: Class Claims Against Investment Adviser Defendants for Aiding and Abetting a Breach of Fiduciary Duty.

The Class Plaintiffs also purport to assert both class claims on behalf of investors in the Fidelity family of mutual funds (the "Fidelity Funds"), and derivative claims on behalf of the Fidelity Funds, against the Fidelity Funds' investment advisers, the Fidelity Funds principal underwriter, the investment advisers' and underwriters' corporate parents, and the Fidelity Fund trustees during class periods beginning July 16, 1999 and ending November 17, 2003 (the "Class Actions").

Although the named plaintiffs in the Class Actions are shareholders in only a handful of funds within the Fidelity Fund Complex, the cases purport to bring derivative claims on behalf of the entire universe of 206 Fidelity mutual funds (*Gilliam* Complaint, Caption, ¶ 1 and Exhibit A; *Awali* Complaint, Caption, ¶ 1 and Exhibit A; *Groeschel* Complaint, Caption, ¶ 1 and Exhibit A; *Bogatin Family Trust* Complaint, Caption, ¶ 1 and Exhibit A; Fallert Complaint, Caption, ¶ 1 and Exhibit A) which, as discussed below, the Class Plaintiffs do not have standing to pursue. The standing issues will undoubtedly bog down litigation of the Class Actions, making wholesale consolidation of the *Haugen* Action with the Class Actions particularly unwarranted. Specifically, although the Class Plaintiffs only own shares or units in a total of 32 funds, the

Class Plaintiffs purport to sue Fidelity for violations of section 36(a) of the ICA on behalf of each of the following funds:

> Fidelity Advisor Aggressive Growth
> Fidelity Advisor Asset Allocation Fund
> Fidelity Advisor Balanced Fund
> Fidelity Advisor Biotechnology Fund
> Fidelity Advisor California Municipal Income Fund
> Fidelity Advisor Consumer Industries Fund
> Fidelity Advisor Cyclical Industries Fund
> Fidelity Advisor Developing Communications Fund
> Fidelity Advisor Diversified International Fund
> Fidelity Advisor Dividend Growth Fund
> Fidelity Advisor Dynamic Capital Appreciation Fund
> Fidelity Advisor Electronics Fund
> Fidelity Advisor Emerging Asia Fund
> Fidelity Advisor Emerging Markets Fund
> Fidelity Advisor Emerging Markets Income Fund
> Fidelity Advisor Equity Growth Fund
> Fidelity Advisor Equity Income Fund
> Fidelity Advisor Europe Capital Appreciation Fund
> Fidelity Advisor Fifty Fund
> Fidelity Advisor Financial Services Fund
> Fidelity Advisor Floating Rate High Income Fund
> Fidelity Advisor Freedom 2000 Fund
> Fidelity Advisor Freedom 2005 Fund
> Fidelity Advisor Freedom 2010 Fund
> Fidelity Advisor Freedom 2015 Fund
> Fidelity Advisor Freedom 2020 Fund
> Fidelity Advisor Freedom 2025 Fund
> Fidelity Advisor Freedom 2030 Fund
> Fidelity Advisor Freedom 2035 Fund
> Fidelity Advisor Freedom 2040 Fund
> Fidelity Advisor Freedom Income Fund
> Fidelity Advisor Global Equity Fund
> Fidelity Advisor Government Investment Fund
> Fidelity Advisor Growth & Income Fund
> Fidelity Advisor Growth & Income Fund II
> Fidelity Advisor Growth Opportunities Fund
> Fidelity Advisor Health Care Fund
> Fidelity Advisor High Income Advantage Fund
> Fidelity Advisor High Income Fund
> Fidelity Advisor Inflation-Protected Bond Fund
> Fidelity Advisor Intermediate Bond Fund
> Fidelity Advisor International Capital Appreciation Fund
> Fidelity Advisor International Small Cap Fund
> Fidelity Advisor Investment Grade Bond Fund
> Fidelity Advisor Japan Fund
> Fidelity Advisor Korea Fund
> Fidelity Advisor Large Cap Fund

Fidelity Advisor Latin America Fund
Fidelity Advisor Leveraged Company Stock Fund
Fidelity Advisor Mid Cap Fund
Fidelity Advisor Mortgage Securities Fund
Fidelity Advisor Municipal Income Fund
Fidelity Advisor Natural Resources Fund
Fidelity Advisor New Insights Fund
Fidelity Advisor New York Municipal Income Fund
Fidelity Advisor Overseas Fund
Fidelity Advisor Real Estate Fund
Fidelity Advisor Short Fixed-income Fund
Fidelity Advisor Short-Intermediate Municipal Income Fund
Fidelity Advisor Small Cap Fund
Fidelity Advisor Strategic Dividend & Income Fund
Fidelity Advisor Strategic Growth Fund
Fidelity Advisor Strategic Income Fund
Fidelity Advisor Tax Managed Stock Fund
Fidelity Advisor Technology Fund
Fidelity Advisor Telecommunications & Utilities Growth Fund
Fidelity Advisor Value Fund
Fidelity Advisor Value Leaders Fund
Fidelity Advisor Value Strategies Fund
Fidelity Aggressive International Fund
Fidelity Air Transportation Portfolio
Fidelity Arizona Municipal Money Market Fund
Fidelity Asset Manager
Fidelity Asset Manager: Aggressive
Fidelity Asset Manager: Growth
Fidelity Asset Manager: Income
Fidelity Automotive Portfolio
Fidelity Banking Portfolio
Fidelity Blue Chip Growth Fund
Fidelity Blue Chip Value Fund
Fidelity Brokerage/Investment Management Market Fund
Fidelity Canada Fund
Fidelity Capital & Income Fund
Fidelity Capital Appreciation Fund
Fidelity Cash Reserves
Fidelity Chemicals Portfolio
Fidelity China Region Fund
Fidelity Computers Portfolio
Fidelity Connecticut Municipal Money Market Fund
Fidelity Construction & Housing Portfolio
Fidelity Contrafund
Fidelity Convertible Securities Fund
Fidelity Defense & Aerospace Portfolio
Fidelity Disciplined Equity Fund
Fidelity Discovery Fund
Fidelity Energy Portfolio
Fidelity Energy Service Portfolio
Fidelity Environmental Portfolio
Fidelity Equity-Income Fund

Fidelity Equity-Income Fund II
Fidelity Europe Fund
Fidelity Export and Multinational Fund
Fidelity Florida Municipal Money Market Fund
Fidelity Focused Stock Fund
Fidelity Food & Agriculture Portfolio
Fidelity Four-In-One Index Fund
Fidelity Fund
Fidelity Ginnie Mae Fund
Fidelity Global Balanced Fund
Fidelity Gold Portfolio
Fidelity Government Income Fund
Fidelity Growth Company Fund
Fidelity Home Finance Portfolio
Fidelity Independence Fund
Fidelity Industrial Equipment Portfolio
Fidelity Industrial Materials Portfolio
Fidelity Insurance Portfolio
Fidelity Intermediate Government Income Fund
Fidelity International Growth & Income Fund
Fidelity Japan Smaller Companies Fund
Fidelity Large Cap Stock Fund
Fidelity Leisure Portfolio
Fidelity Low-Priced Stock Fund
Fidelity Magellan Fund
Fidelity Massachusetts Municipal Money Market Fund
Fidelity Medical Delivery Portfolio
Fidelity Medical Equipment Systems Portfolio
Fidelity Michigan Municipal Money Market Fund
Fidelity Mid-Cap Stock Fund
Fidelity Money Market Trust: Retirement Government Money Market Portfolio
Fidelity Money Market Trust: Retirement Money Market Portfolio
Fidelity Multimedia Portfolio
Fidelity Municipal Money Market Fund
Fidelity Nasdaq Composite Index Fund
Fidelity Natural Gas Portfolio
Fidelity Networking & Infrastructure Portfolio
Fidelity New Jersey Municipal Money Market Fund
Fidelity New Markets Income Fund
Fidelity New Millennium Fund
Fidelity New York Municipal Money Market Fund
Fidelity Nordic Fund
Fidelity Ohio Municipal Money Market Fund
Fidelity OTC Portfolio
Fidelity Pacific Basin Fund
Fidelity Paper & Forest Products Portfolio
Fidelity Pennsylvania Municipal Money Market Fund
Fidelity Pharmaceuticals Portfolio
Fidelity Puritan Fund
Fidelity Real Estate Income Fund
Fidelity Retailing Portfolio
Fidelity Select Biotechnology Portfolio

Fidelity Select Money Market Portfolio
Fidelity Short-Term Bond Fund
Fidelity Small Cap Independence Fund
Fidelity Small Cap Retirement Fund
Fidelity Small Cap Stock Fund
Fidelity Software/computer Services Portfolio
Fidelity Southeast Asia Fund
Fidelity Spartan Government Income Fund
Fidelity Stock Selector Fund
Fidelity Structured Large Cap Growth Fund
Fidelity Structured Large Cap Value Fund
Fidelity Structured Mid Cap Growth Fund
Fidelity Structured Mid Cap Value Fund
Fidelity Tax-Free Money Market Fund
Fidelity Total Bond Fund
Fidelity Transportation Portfolio
Fidelity Trend Fund
Fidelity U.S. Bond Index Fund
Fidelity U.S. Government Reserves Fund
Fidelity Ultra-short Bond Fund
Fidelity Utilities Fund
Fidelity Utilities Growth Portfolio
Fidelity Value Discovery Fund
Fidelity Wireless Portfolio
Fidelity Worldwide Fund
Spartan 500 Index Fund
Spartan Arizona Municipal Income Fund
Spartan CA Municipal Money Market Fund
Spartan California Municipal Income Fund
Spartan Connecticut Municipal Income Fund
Spartan Extended Market Index Fund
Spartan Florida Municipal Income Fund
Spartan Intermediate Municipal Income Fund
Spartan International Index Fund
Spartan Investment Grade Bond Fund
Spartan MA Municipal Money Market Fund
Spartan Maryland Municipal Income Fund
Spartan Massachusetts Municipal Income Fund
Spartan Michigan Municipal Income Fund
Spartan Minnesota Municipal Income Fund
Spartan Money Market Fund
Spartan Municipal Income Fund
Spartan Municipal Money Fund
Spartan New Jersey Municipal Income Fund
Spartan New York Municipal Income Fund
Spartan NJ Municipal Money Market Fund
Spartan NY Municipal Money Market Fund
Spartan Ohio Municipal Income Fund
Spartan Pennsylvania Municipal Income Fund
Spartan Short-Intermediate Municipal Fund
Spartan Tax-free Bond Fund
Spartan Total Market Index Fund

Spartan U.S. Equity Index Fund
Spartan U.S. Government Money Market Fund
Spartan U.S. Treasury Money Market Fund

*See* Class Action Complaints, Captions, ¶¶ 1 and Exhibit(s) A.

**C.    There Are Inherent Conflicts Between the Derivative Claims and the Class Claims Asserted by the Class Plaintiffs.**

There are inherent conflicts of interest within the Class Action Complaints between class claims and derivative claims asserted therein which prevent the Class Plaintiffs from representing derivative interests asserted in the *Haugen* Action. The Class Plaintiffs cannot both seek to recover money for themselves personally, and for the funds derivatively.

As numerous courts have held, named plaintiffs' roles as both class representatives and plaintiffs in a derivative action present impermissible conflicts of interest because recovery in a class suit could reduce potential recovery in a derivative suit. For example, in *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986), the Court held that proposed named plaintiffs were inadequate representatives when their roles in both class and derivative litigation presented an impermissible conflict of interest, because recovery in the class suit could reduce potential recovery in the derivative suit. "Prosecution of both a derivative and class action by plaintiffs Kamerman and Stepak presents an impermissible conflict of interest … " *Id.*[5]  *See also Crawford v. Magee,* No. 89-1038, 1993 WL 438463, at *4 (D. Mass. Oct. 12, 1993) (stating in dicta, "[I]n derivative actions, courts look to a variety of factors, including: economic antagonisms between representative and class … " and finding that plaintiff's derivative interest would preclude his serving as class representative); *Ryan v. Aetna Life Ins. Co.,* 765 F. Supp. 133, 135 (S.D.N.Y. 1991) (shareholder could not simultaneously pursue derivative and class actions because of

---

[5] This conflict exists even though this is not a limited fund case. Thus, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court found that serious intra-class conflicts precluded the class from meeting the adequacy of representation requirement in an asbestos mass tort action. While the members of the class were united in seeking the maximum possible recovery for their asbestos-related claims, the Supreme Court found that the settlement did more than simply provide a general recovery fund. Rather, as the Third Circuit noted, "it makes important judgments on how recovery is to be *allocated* among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd*, 521 U.S. 591 (1997).

conflict of interest); *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108-09 (S.D.N.Y. 1990) (proposed class and derivative actions present at least a theoretical conflict because "[s]ubstantial recovery on the class claim may reduce the potential recovery on behalf of the corporation on the derivative claim)"; *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 75-6194, 1977 WL 1046, at *3 (S.D.N.Y. 1977) ("[A]n obvious conflict would arise here if plaintiff were permitted to amend his complaint in order to bring a class action as well as a derivative action....   A plaintiff cannot bring a class action against a corporation and at the same time bring a derivative action on behalf of that corporation"); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n. 6 (S.D.N.Y. 1976) (where plaintiff purports to bring this action in both an individual and derivative capacity, potential conflict of interest exists, with the result that plaintiff must choose between the pursuit of his personal interest and that of the corporation); *Ruggiero v. Am. Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972) ("I fail to see how, on the one hand, [plaintiffs] can vigorously seek recovery on behalf of those who have an equity interest in the corporation and, on the other hand, vigorously seek recovery from the corporation on behalf of those who have no equity interest in the corporation").

The *Haugen* Plaintiffs do not face these disqualifying conflicts because their sole interest is in maximizing recovery for the Funds.  The derivative claims under section 36(b) of the ICA therefore should be pursued separately.

**D.    Consolidation of the *Haugen* Action with the Class Actions Would Substantially Delay the Resolution of the *Haugen* Claims.**

The differences between the *Haugen* Action and the Class Actions, as discussed above, create the potential for serious delay with respect to the resolution of the *Haugen* claims. There are numerous issues in the Class Actions that will need to be resolved before the case can proceed to the discovery phase and ultimately to a trial. As discussed below, most of these issues are unique to the Class Actions and would not appear in the *Haugen* Action if those actions proceeded on an individual basis.

1.    **The Class Action Plaintiffs Do Not Have Standing to Sue On Behalf of the Entire Universe of 206 Fidelity Mutual Funds, and Thus Standing Disputes Will Unnecessarily Delay the Class Actions.**

The fact that the Class Plaintiffs sue on behalf of more funds than they actually own will unnecessarily delay prosecution of the Class Actions, thereby defeating one of the statutory purposes of Fed. R. Civ. P. 42(a): "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as *may tend to avoid unnecessary costs or delay*." (Emphasis added). Such a delay jeopardizes the very benefits that the Class Plaintiffs proclaim to seek through their consolidation efforts. According to their Complaints, Plaintiff Gilliam owns shares or units of three (3) funds (*Gilliam* Complaint, ¶ 12); Plaintiff Bogatin Family Trust owns shares of three (3) funds (*Bogatin Family Trust* Complaint, ¶ 12); Bennett Plaintiffs own shares of five (5) funds (*Bennett* Complaint, ¶¶ 34-35); Awali Plaintiffs own shares of twenty-two (22) funds (*Awali* Complaint, ¶¶ 12-26); Plaintiff Groeschel owns shares of eight (8) funds (*Groeschel* Complaint ¶ 12); and Plaintiff Fallert owns shares of three (3) funds (*Fallert* Complaint ¶ 12). The funds held by the Class Action Plaintiffs above include 32 different funds; however, the Class Plaintiffs purport to represent the entire universe of 206 Fidelity Funds. In contrast, the *Haugen* Plaintiffs sue only for the benefit of the funds in which the named Plaintiffs own shares.

Under section 36(a) of the ICA, the Class Action Plaintiffs lack standing to sue on behalf of the 174 funds in the Fidelity Funds Complex that they do not own (but name as defendants in their complaints). Section 36(b) imposes a fiduciary duty on the investment adviser not to charge excessive fees and creates a private right of action by a shareholder of the injured mutual fund,

on behalf of that mutual fund, against the adviser for a breach of this duty.  In this regard section

36(b) is explicit:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services.... An action may be brought under this subsection by the Commission, or **by a security holder of such registered investment company on behalf of such company**, against such investment adviser ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company....

15 U.S.C. §80a-35(b) (emphasis added).  "Pursuant to 15 U.S.C. §80a-35(b), plaintiffs do not

have standing to bring a section 36(b) claim on behalf of investment companies other than the

Funds in which they are security holders …"  *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486

(N.D. Ill. 1999); *Olesh*, 1995 WL 500491 (rejecting plaintiffs' efforts to maintain action under

section 36(a) not only on behalf of funds owned by plaintiffs, but on behalf of "the Dreyfus

family of funds"); *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979)

("plaintiff who does not hold stock in the investment company lacks standing to sue under the

Investment Company Act").

As the Court explained in *Weiner v. Winters,* 50 F.R.D. 306 (S.D.N.Y. 1970):

> **There is nothing in the Investment Company Act (15 U.S.C. § 80a-1 et seq.) which would authorize a shareholder of one mutual fund to bring a derivative action on behalf of another mutual fund in which he holds no shares.... "Standing to assert claims under the Investment Act extends to any person holding an ownership interest in a company subject to the Act....**
>
> * * *
>
> It is clear that in the instant case, plaintiff, who owns no shares in the moving defendants, has no capacity to maintain a derivative action on their behalf.

*Id.* at 310-11 (emphasis added), *quoting General Time Corp. v. American Investors Fund, Inc.*,

283 F.Supp. 400 (S.D.N.Y.), *aff'd on other grounds,* 403 F.2d 159 (2nd Cir. 1968), *cert. denied*

*sub nom. General Time Corp. v. Talley Industries, Inc.*, 393 U.S. 1026 (1969).

Even in the class context, courts have also held that plaintiffs lack standing to maintain class claims on behalf of purchasers of mutual funds other than the mutual fund which the plaintiffs actually own. *See Nenni v. Dean Witter Reynolds, Inc.*, No. 98-12454, slip op. at 5 (D. Mass. Sept. 29, 1999) (plaintiff has standing to bring claims for the shares in the four mutual funds that he actually holds; plaintiff can only create a class of people who have purchased shares of same mutual funds that he actually holds). *See also Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) (named plaintiff had standing to sue a defendant accounting firm in connection with his purchase of a limited partnership interest, but he did not have standing to sue that defendant with respect to the accounting firm's work for 19 other limited partnerships); *In re Colonial Ltd. P'ship. Litig.*, 854 F. Supp. 64, 82-83 (D. Conn. 1994) (named plaintiff lacked standing to bring claims on behalf of purchasers of limited partnership interests in which named plaintiff had not invested); *Spira v. Nick*, 876 F. Supp. 553, 562 (S.D.N.Y. 1995) (plaintiff does not have standing to seek relief on behalf of the investors in the entities in which he does not claim an interest).

Thus, the Class Plaintiffs only have standing to sue on behalf of the funds that they hold. The legal wrangling that is sure to ensue regarding standing issues contributes to the *Haugen* Plaintiffs' arguments that wholesale consolidation should be avoided here.

### 2.    The *Haugen* Action Will Be Delayed While Class Certification Issues in the Class Actions Are Resolved.

As noted above, the *Haugen* Action states statutory derivative claims brought on behalf of two Fidelity Funds. The Class Actions, on the other hand, are brought on behalf of a class, consisting of all investors who purchased or held shares in any of the 204 funds listed as nominal defendants during the time period of July 19, 1999 through November 17, 2003. Because the Class Actions are brought on behalf of a potentially enormous class of investors, issues such as class certification and the selection of class representatives and class counsel must be resolved before the Class Actions can progress. These class certification issues can often take months if

not years to resolve, and in many instances discovery is stayed until these issues are resolved.[6] The *Haugen* Action, on the other hand, as a statutory derivative action, is not subject to these same procedural hurdles and requirements. The *Haugen* Action should not be delayed, potentially for years, so that issues that have no relevance to its claims can be hashed out.

### 3. The *Haugen* Action Will Be Delayed While Dispositive Motions Pertinent Only To The Class Actions Are Resolved.

It is also certain that motions to dismiss will be filed in the Class Actions, which will serve to further delay the development, prosecution and eventual resolution of those cases. There are a number of issues that exist in the Class Actions, but do not exist in the *Haugen* Action, making motions to dismiss in the Class Actions almost inevitable.

Because of conflicting case law, whether or not claims asserted in the Class Actions under section 34(b) the Investment Company Act and section 206 of the Investment Advisors Act (Investment Advisers Act of 1940, as amended in 15 U.S.C. §§ 80b-1-80b-21 can be maintained as private causes of action is ripe for legal argument on a motion to dismiss. *See Dorchester Investors v. Peak Int'l. Ltd.,* 134 F. Supp. 2d 569 (S.D.N.Y. 2001) (holding that there is no private right of action under section 34(b) of the Investment Company Act, which bars the filing of false statements in connection with the Act.); *Goldstein v. Malcolm G. Fries & Assoc., Inc.,* 72 F. Supp. 2d 620 (E.D. Va. 1999) (finding that no private right of action exists under section 206 of the Investment Advisors Act, which establishes the federal fiduciary standards governing the conduct of investment advisors).

Although not categorized as such in the complaints filed in the Class Actions, the claims therein for common law breaches of fiduciary duty against the trustees are arguably derivative claims. As such, there are certain requirements for derivative actions that have not been set forth in the complaints filed in the Class Actions. Specifically, the complaints in the Class Actions fail

---

[6] A Rule 23(f) petition to the Court of Appeals by whichever party is aggrieved by this Court's class certification decision is almost a certainty in a massive class action like the one contemplated by the Class Action Plaintiffs.

to set forth that a prior demand was made upon the trustees. *See Turul v. Rogatol Distribs., Inc.,* 951 F.2d 1, 2 (1st Cir. 1991) (the court dismissed shareholder's complaint for failure to meet the requirements of Federal Rule of Civil Procedure 23.1 and held that in a shareholder derivative action "a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile").   Although the claims in the *Haugen* Action are considered "quasi-derivative," they are ***not*** subject to the same demand requirement and will not face that challenge in a motion to dismiss. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 542 (1984) (holding that a plaintiff in an action brought pursuant to section 36(b) of the Investment Company Act need ***not*** first make a demand upon the fund's directors before bringing suit).

   **4.    Case Management Conflicts Between the Class Actions and the *Haugen* Action Will Cause Delay.**

   The Class Action plaintiffs' proposed order setting a schedule after consolidation is a further indication of the delay that will occur to the *Haugen* Action if it is consolidated with the Class Actions. The proposed order sets forth that an amended complaint will be filed sixty days after an order of consolidation is entered by the Court; that an answer or motion to dismiss will be filed forty-five days after the filing of a consolidated complaint; that any opposition to motions will be due forty-five days after the motions are filed; and any reply briefs will be due thirty days after any opposition briefs.   This adds, at a minimum, 180 days, or six months, before the Class Actions can proceed in a substantive manner. The *Haugen* Plaintiffs, on the other hand, do not anticipate the immediate need to file an amended complaint. This means that the *Haugen* Action is ready to proceed with discovery immediately, whereas it will be many months before the Class Actions even come close to this stage.

**E.    The Blanket Consolidation of the *Haugen* Action with the Class Actions Will Create Substantial Confusion and Result in Severe Prejudice to the *Haugen* Plaintiffs.**

   There are also a number of material differences between the *Haugen* Action and the Class Actions that have the potential to create conflicts and confusion if the cases are consolidated.   All

of those issues will have the combined effect of increasing the burden on the Court rather than meeting the goal of consolidations: to promote convenience and judicial economy.

One material difference between the *Haugen* Action and the Class Actions is that, while the claims asserted in the *Haugen* Action are subject to a one-year statute of limitation period, *see* section 36(b)(3) of the ICA, 15 U.S.C. §80a-35(b)(3), the Class Actions seek to represent a class of investors that held Fidelity mutual fund shares during a four year, four month period that does not include half of the period for which the *Haugen* Plaintiffs seek damages. Specifically, whereas the Class Actions seek to represent a class of investors who held Fidelity funds shares between July 19, 1999 and November 17, 2003, the *Haugen* Action seeks damages starting from one year prior to the initiation of the action, or from May 5, 2003, and continuing through trial (if the defendants continue to charge the excessive fees through trial). The difference in the damage periods, creates the potential for conflicting interests within the same consolidated action and confusion at a trial as to what evidence is applicable to which time period and how to calculate damages for different time periods. This conflict and the confusion that would result from consolidation outweigh the limited benefits consolidation would provide.

There is also the potential for conflict between the *Haugen* Action and the Class Actions because the *Haugen* Action requires a bench trial, *see In re Evangelist,* 760 F.2d 27, 31-32 (1st Cir. 1985) (shareholder of investment company who sued company and its investment advisor, claiming that company was paying advisor to large a fee, was not entitled to a jury trial, as claim was basically equitable, despite shareholder's prayer for "damages" in his request for relief); *Kalish v. Franklin Advisers, Inc.*, 928 F.2d 590, 591 (2d Cir. 1991) (derivative action to recoup allegedly excessive fees paid by fund to investment advisor was equitable in nature and thus shareholder had not right to a jury trial), whereas the plaintiffs in the Class Actions have

demanded a jury trial. The fact that the Class Action Plaintiffs have demanded a jury trial while the *Haugen* Plaintiffs have not will most likely result in separate trials of the class claims and the derivative claims. Consolidation of the class claims and derivative claims makes no sense if the claims must be tried separately. *See United States EPA v. City of Green Forest*, 921 F.2d 1394, 1403 (8th Cir. 1990) (upholding district court's refusal to consolidate actions in part because the claims in one action were to be tried to a jury and the claims in the other action were to be tried to the court); *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 318 (S.D.N.Y. 1976) (denying motion to consolidate in part due to the fact the confusion would result from the facts that jury demands were made in one of the actions while the other action had to be tried to the court).

### III.  CONCLUSION

Consolidation may be appropriate under Fed. R. Civ. Proc. 42(a) where two proceedings involved a common party and common issues of law or fact. *Seguro de Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.,* 878 F.2d 5, 8 (1st Cir. 1989). The analysis, however, does not stop there. The Court must also "weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of any confusion, delay or prejudice that might result from consolidation." *See Data Gen. Corp. v. Grumman Sys. Support Corp.,* 834 F. Supp. 477, 487 (D. Mass. 1992), *citing Spirt v. Teachers Ins. & Annuity Ass'n,* 93 F.R.D. 627, 639 (S.D.N.Y. 1982); *Fleishman v. Prudential-Bache Sec., Inc.,* 103 F.R.D. 623, 624-25 (E.D. Wis. 1984) ("a party moving for consolidation must show that consolidation would promote trial convenience and economy in administration due to factors other than a mere commonality of legal and factual issues"). If the benefits of consolidation are outweighed by its costs and prejudice to the parties, consolidation is inappropriate. *Town of Norfolk v. United States EPA*, 134 F.R.D. 20, 22 (D. Mass. 1991), *citing Seguro de Servicio*, 878 F.2d at 8.   The burden is on the moving party in persuading the court to grant its motion to

consolidate. *Solvent Chemical Co. ICC Ind., Inc. v. E.I. Dupont De Nemours & Co.*, 242 F.Supp.2d 196, 221 (W.D.N.Y. 2002).

The Class Action plaintiffs' motion to consolidate is devoid of any discussion of how consolidation of these matters would benefit the parties as well as serve the interests of judicial convenience and economy. Moreover, the motion to consolidate utterly ignores glaring and material differences between the *Haugen* Action and the Class Actions, which have the potential to drastically delay a resolution of the *Haugen* Action, create tremendous additional costs for the *Haugen* Plaintiffs, and otherwise cause confusion in the administration and proceeding of the *Haugen* Action and the Class Actions if the cases were consolidated. The additional judicial labor and administration that consolidation will require and the substantial prejudice, confusion and delay that the *Haugen* Plaintiffs will suffer as a result of consolidation with the Class Actions greatly outweigh any benefits that could result from consolidation.

For the reasons stated above, the *Haugen* Plaintiffs respectfully request that the Court deny the Class Actions' motions to consolidate and appoint tri-lead counsel to the extent that they seek to consolidate the *Haugen* Plaintiffs' focused derivative claims into their far-reaching Class Actions.

## IV.  REQUEST FOR ORAL ARGUMENT

The *Haugen* Plaintiffs respectfully request that the Court hear the issues above in an oral argument to be scheduled.

Dated October 7, 2004                     Respectfully submitted,

                                          SHAPIRO HABER & URMY LLP


                                          By:    /s/ Michelle H. Blauner
                                               Michelle H. Blauner, BBO # 549049
                                          53 State Street
                                          Boston, MA  02109
                                          (617) 439-3939

Lynn Lincoln Sarko (*pro hac vice*)
Michael D. Woerner (*pro hac vice*)
Gretchen F. Cappio (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Ste. 3200
Seattle, WA 98101-3052
(206) 623-1900

Gary Gotto, Bar No. 007401
Ron Kilgard, Bar No. 005902
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Ste. 900
Phoenix, AZ 85012
(602) 248-0088

Michael J. Brickman (*pro hac vice*)
James C. Bradley (*pro hac vice*)
Nina H. Fields (*pro hac vice*)
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
174 East Bay Street
Charleston, SC 29401
(842) 727-6500

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR, RUPPEL & BURNS,
L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL 33602
(813) 225-2500

*Counsel for Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Rose M. Iannaccone, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin, for the use and benefit of Fidelity Magellan and Fidelity Contrafund*

## CERTIFICATE OF SERVICE

I, Michelle Blauner, hereby certify that I served a copy of the foregoing document upon counsel for all parties via the Court's ECF service or by mailing a copy of same, postage prepaid, to each attorney of record, this 7th day of October, 2004.

    /s/ Michelle H. Blauner
Michelle H. Blauner, BBO # 549049